***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner DeLuca and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner DeLuca with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and that the Industrial Commission has jurisdiction of the parties and of the subject matter. *Page 2 
2. All parties are subject to and bound by the North Carolina Worker's Compensation Act.
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
4. Plaintiff sustained an injury on December 8, 2003, to her right knee.
5. Defendants accepted the claim via a Form 60 filed December 19, 2003.
6. Plaintiff's average weekly wage was $817.17 with a compensation rate of $544.78 and plaintiff has received wage benefits from defendants since December 9, 2003.
7. Plaintiff was born on November 2, 1943, and now has a general equivalency degree as of approximately April 2006.
8. Plaintiff was hired on or about February 21, 2000, by defendant-employer and was terminated on March 25, 2004.
9. An employment relationship existed between plaintiff and defendant-employer prior to, on the date of injury, and until the date of termination, March 25, 2004.
10. PMA Insruance Group is the carrier on the risk for this claim.
11. Defendants filed a Form 24 on September 20, 2004, seeking termination of plaintiff's compensation benefits. A telephonic hearing was held on October 20, 2004, before Special Deputy Commissioner Baucom with appearances and oral arguments by Debra Dunaway, defendant-carrier's adjuster at the time, and plaintiff's counsel. Defendants' Form 24 was denied via Special Deputy Commissioner Baucom's Order dated October 27, 2004.
12. The parties stipulated to the admission of a Pretrial Agreement, Industrial Commission forms and filings, vocational rehabilitation records, medical records, discovery *Page 3 
responses, and other correspondence. The deposition transcripts for Dr. Charles Taft and Dr. Courtenay Whitman have also been entered into the record.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a 64-year-old industry worker, born November 2, 1943. In April 2006, plaintiff received a high school equivalency certificate by passing the General Educational Development Test ("GED"). She worked for 26 years with Adams/Millis, which eventually became Sara Lee, prior to her employment with defendant-employer.
2. Plaintiff worked originally as an Inspector for defendant-employer and then agreed to be cross-trained as an Assembly Machine Operator at defendant-employer's request. Plaintiff had been exclusively operating the "warping machine" for approximately a year to a year and a half prior to December 8, 2003.
3. Prior to December 8, 2003, plaintiff had no medical problems regarding her right knee, hip or leg and was not under any medical restrictions limiting any of her employment duties.
4. Plaintiff injured her knees on December 8, 2003, when the operator of a forklift, who was assisting her in removing a beam that she had finished processing, accidentally tilted the forks forward causing the beam to roll forward off of the forks and pin plaintiff's legs against another beam. *Page 4 
5. Plaintiff was sent to Primecare in Kernersville on the date of injury and returned for a follow-up appointment on December 10, 2003. Plaintiff was taken out of work and referred to Dr. Charles Taft at Orthopedic Specialists of the Carolinas.
6. Dr. Taft began treating plaintiff on December 11, 2003, for bilateral knee contusions and documented an area of fluid collection along the lateral aspect of her right knee. X-rays were made at Primecare and reported as negative for fractures. The right knee was reported as more tender than the left. The diagnosis was contusion right greater than left knee. Plaintiff was treated with heat to the knees and use of a Neoprene knee brace on right knee. Plaintiff was written out of work until a follow-up appointment.
7. Plaintiff returned on December 18, 2003, with continued complaints of pain in both knees. On exam there was no detection of any effusion in the left knee or right knee. Dr. Taft observed "a good bit" of soft-tissue swelling on her right knee. Plaintiff was again restricted from any work.
8. Defendants accepted plaintiff's workers' compensation injury as compensable via a Form 60 filed December 19, 2003.
9. On December 29, 2003, Dr. Taft found plaintiff improved and anticipated that plaintiff would be able return to work in three weeks, after her next visit. Dr. Taft prescribed physical therapy as well.
10. After three physical therapy sessions, the physical therapist's Progress Note, dated January 16, 2004, indicated that minimal progress had been made and that moderate edema remained throughout the joint. The physical therapist recommended additional sessions. *Page 5 
11. On January 21, 2004, plaintiff reported pain along the medial side of her right leg. An ultrasound was ordered to rule out a deep venous thrombosis. Plaintiff was to remain out of work, and additional physical therapy was ordered.
12. During her treatment with Dr. Taft, plaintiff was involved in a motor vehicle accident when her pick-up truck was hit by another car on January 25, 2004. Plaintiff's whole body was sore from the incident but her knee was not specifically injured. She did not seek medical attention and entered into an insurance settlement five days after the accident that included $200.00 for "pain and suffering," which was merely for her inconvenience of being in the accident.
13. On February 2, 2004, Dr. Taft indicated plaintiff could go back to work full duty on February 23, 2004.
14. Plaintiff's physical therapist completed a Progress Report on February 4, 2004, and remarked that there had been "No significant change in knee pain or swelling." Dr. Taft declined the physical therapist's recommendation for additional therapy at that time.
15. Plaintiff attempted to return to work on or about February 24, 2004, and could not perform her job. Plaintiff experienced pain in her knees when she attempted to push with her legs while pulling up yarn to set up her machine.
16. Dr. Taft examined plaintiff on February 25, 2004, and ordered an MRI, additional physical therapy and took her back out of work. Plaintiff complained of right knee pain. Dr. Taft reported plaintiff's symptoms seemed to be out of proportion to the objective findings.
17. Dr. Taft reviewed the MRI with plaintiff on March 17, 2004, disclosing that the MRI showed bone marrow edema in the posterior aspect of the medial femoral condyle, medial compartment degenerative changes with mild joint space narrowing and spur formation, but *Page 6 
there was no evidence of ligamentous or meniscal abnormality. Plaintiff was referred back to physical therapy.
18. Defendant-employer terminated plaintiff on March 25, 2004, while she was written out of work by Dr. Taft because plaintiff extinguished her leave afforded her under the Family Medical Leave Act.
19. Dr. Taft completed a defendant-carrier's Return To Work Physical Capabilities form on April 16, 2004, indicating that plaintiff could not stand, walk, sit, drive, lift, or carry any weight and that she could not bend, squat, climb, kneel, crawl or use foot controls at that time.
20. Plaintiff continued physical therapy through March, April and May 2004. The physical therapist observed and noted plaintiff's increased swelling and difficulty squatting throughout her sessions. The physical therapist also recommended plaintiff undergo a Functional Capacity Evaluation.
21. On May 20, 2004, Dr. Taft placed plaintiff at maximum medical improvement and assigned a 5% permanent partial impairment rating of her right knee. Plaintiff was not provided any physical limitations with regard to her working in the future and was discharged from care. In his deposition, Dr. Taft testified that he would have expected the contusion that plaintiff suffered to have resolved by May 20, 2004.
22. Dr. Courtenay Whitman at Tri-County Orthopedics conducted plaintiff's second opinion examination on July 12, 2004. Dr. Whitman's impression of plaintiff's injury was that she had a "traumatic contusion of the prepatellar bursa and some inflammation of the infrapatellar branch of the saphenous nerve." He recommended that she have a corticosteroid injection in the prepatellar bursa and infrapatellar branch of the saphenous nerve and assigned work restrictions of no kneeling and no squatting. *Page 7 
23. Dr. Whitman saw plaintiff again on August 4, 2004, for a follow-up appointment and with no significant pain relief gained by the injection, Dr. Whitman opined, "[m]y impression is that she has chronic irritation in the infrapatellar branch of the saphenous nerve with some bursal irritation without swelling." He concurred with the 5% rating to the right knee and assigned permanent restrictions of no kneeling, no repetitive squatting and no crawling.
24. Dr. Whitman's assessment of plaintiff's condition was that it was chronic. Dr. Whitman testified to the type of pain that plaintiff was likely to experience as being a burning, very sharp, sticking pain when kneeling. Plaintiff was also likely to have pain with squatting and a funny and decreased sensation over the knee. Dr. Whitman confirmed his assignment of permanent work restrictions of no kneeling, no repetitive squatting and no crawling and indicated that any performance of those restricted activities would cause plaintiff increased pain and discomfort. Dr. Whitman based his permanent restrictions on both his objective findings and plaintiff's subjective complaints. Dr. Whitman was firm in his deposition testimony that his restrictions were given simply in reference to plaintiff's complaints of pain. Dr. Whitman testified that if plaintiff continued to work without restrictions, she would do no further damage to her knee. Dr. Whitman testified that Dr. Taft's recommendations were "very appropriate". The testimony of Dr. Whitman is deemed credible and is accepted as fact. The work restrictions issued by Dr. Whitman are deemed to be appropriate.
25. On January 6, 2005, plaintiff returned to Dr. Taft with continued complaints of pain in her right knee. Plaintiff reported she had been trying to obtain employment through vocational rehabilitation. Dr. Taft did not place any restrictions on plaintiff and did not change her rating. These opinions were repeated when Dr. Taft saw plaintiff again on April 6, 2005. *Page 8 
26. Plaintiff was seen on March 4, 2005, at Guilford Orthopaedic and Sports Medicine Center with Dr. Albert Bartko for an independent medical evaluation. On examination, Dr. Bartko reported that plaintiff's pain was rather diffuse in the region of the knees. His impression was chronic, vague, nonspecific pain in the distribution of the knees bilaterally. Dr. Bartko thought that MRI findings were incidental and he had no good explanation for plaintiff's ongoing symptoms.
27. Tiana Herbin, a Vocational Rehabilitation Specialist, conducted an initial meeting with plaintiff on May 24, 2004.
28. Upon her release with permanent restrictions by Dr. Whitman on August 4, 2004, plaintiff waited to hear from Ms. Herbin regarding the vocational rehabilitation services she had commenced in May. When she was not contacted, plaintiff began looking for work on her own on September 14, 2004, and documented nineteen different contacts over a five-week period ending on October 20, 2004.
29. Defendants filed a Form 24 Application in an attempt to terminate plaintiff's temporary total disability benefits on September 20, 2004, citing Dr. Taft's release with a 5% rating without work restrictions. A telephonic hearing was held on October 20, 2004, and Special Deputy Commissioner Baucom denied defendants' Form 24 Application on October 27, 2004, because "defendants have failed to show that plaintiff is medically unrestricted in her ability to obtain employment."
30. Ms. Herbin conducted her second initial assessment of plaintiff on October 14, 2004. Ms. Herbin recounted plaintiff's four-year history with defendant-employer as an Assembly Machine Operator earning a wage of $11.26 an hour. Ms. Herbin concluded that plaintiff's previous position was unsuitable for her return. *Page 9 
31. Beginning with their meeting on November 11, 2004, Ms. Herbin commented in her Progress Reports that plaintiff was enthusiastic about returning to work.
32. Between October 14, 2004, the date that Ms. Herbin began full vocational rehabilitation services, and April 14, 2006, 295 job leads were provided. Of those 295 job leads, Ms. Herbin testified remembering plaintiff receiving one job offer, which Ms. Herbin deemed unsuitable. Ms. Herbin listed plaintiff's age, her education, the area's depressed employment market, her work restrictions and her relatively narrow prior work experience as challenges that she has faced in locating suitable alternative employment for plaintiff. Ms. Herbin's assessment of plaintiff's chances of finding suitable alternative employment was pessimistic, although not futile
33. Plaintiff's search for suitable alternative employment included re-applying for multiple positions with defendant-employer, who declined to re-employ her.
34. As a result of plaintiff's compensable injury of December 8, 2003, plaintiff has been and continues to be unable to find work in her same employment or any other employment at her pre-injury average weekly wage.
35. Defendants did not bring or defend this claim on unreasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On December 8, 2003, plaintiff suffered a compensable injury to her knees by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). *Page 10 
2. Plaintiff has received temporary total disability benefits since December 9, 2003. N.C. Gen. Stat. § 97-29.
3. Plaintiff was terminated by defendant-employer on March 25, 2003, for failing to return to work after her FMLA leave expired. Her termination does not equate to a constructive refusal to accept suitable alternative employment because at the time of her dismissal she was written out of work by her treating physician, a reason clearly related to her workers' compensation injury. McRae v. Toastmaster, Inc.,358 N.C. 488, 597 S.E.2d 695 (2004).
4. An employee injured in the course of his employment will only be deemed disabled under the Workers' Compensation Act if their injury results in an "incapacity . . . to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. §§ 97-2(9), 97-31; Russell v. Lowes ProductsDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
5. In order to meet the burden of proving continuing disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., *Page 11 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. In the case at hand, plaintiff demonstrated her lack of wage earning capacity by proffering evidence that she is capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in her efforts to obtain employment. Peoples v. Cone MillsCorp., 316 N.C. at 444, 442 S.E.2d at 809; Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
7. Plaintiff sustained a 5% permanent partial disability rating to her right leg as a result of her right knee injuries. N.C. Gen. Stat. §97-31.
8. Because of plaintiff's continued ability to display a loss of wage earning capacity, the date that she was assessed as having reached maximum medical improvement does not signify a conversion of her temporary total disability benefits under N.C. Gen. Stat. § 97-29 to a finite period of permanent disability compensation under N.C. Gen. Stat. § 97-31. Therefore, there has not been an overpayment because plaintiff has been eligible to select the most munificent benefit, ongoing temporary total disability benefits under N.C. Gen. Stat. § 97-29.Collins v. Speedway Motor Sports Corp., 165 N.C.App. 113, 122,598 S.E.2d 185, 192 (2004).
9. Dr. Whitman shall serve as the authorized treating physician for plaintiff. N.C. Gen. Stat. § 97-25.
10. Plaintiff's request for the imposition of sanctions against defendants under N.C. Gen. Stat. § 97-88.1 is denied. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following: *Page 12 
 AWARD
1. Defendants shall continue to pay temporary total disability benefits to plaintiff in the amount of $544.78 per week until further order of the Industrial Commission.
2. Dr. Whitman is designated as plaintiff's authorized treating physician.
3. An attorney's fee is approved for plaintiff's counsel in the amount of 25% of the indemnity compensation benefits to be paid to plaintiff from the issuance of this Opinion and Award forward. Plaintiff's request for attorneys fees under N.C. Gen. Stat. § 97-88 is hereby DENIED.
4. Defendants shall pay the costs, including an expert witness fee of $500.00 to Dr. Whitman.
This the 4th day of February, 2007.
 S/______________________
 DIANNE C. SELLERS
 COMMISSIONER
CONCURRING:
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ DANNY LEE McDONALD COMMISSIONER *Page 1